**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| QUANTUM LABS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MAXIM INTEGRATED PRODUCTS INC, et al.,<br><br>Defendants. | Case No. 18-cv-07598-BLF<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>[RE: ECF 38] |

Plaintiffs Serban Porumbescu, also known as Simon Planck, and Quantum Labs, Inc. ("Quantum") sue Defendants Maxim Integrated Products Inc. ("Maxim") and Mr. Tunc Doluca, Maxim's CEO, claiming that Defendants deliberately caused hazardous waste to be released incident to Maxim's operations at a facility operated by Plaintiffs in San Jose, CA. Arising from these allegations, Plaintiffs assert eight (8) state and federal causes of action.

Before the Court is Defendants' motion to dismiss four (4) causes of action in Plaintiffs' First Amended Complaint ("FAC"). Mot., ECF 38. Additionally, Defendants seek to strike Plaintiffs' request for civil penalties pursuant to California Health & Safety Code § 25359.7. The Court heard oral argument on Defendants' motion on October 10, 2019 ("the Hearing"). For the reasons stated on the record and discussed below, the motion is GRANTED IN PART (WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART) and DENIED IN PART.

**I.   BACKGROUND**

Mr. Planck owns and Quantum operates a facility at 2108 Bering Drive, Unit B, San Jose,

California ("Quantum Facility")[1]. *See* FAC ¶ 2, ECF 36. On December 17, 2012, Maxim and a third party, Hyperion Group, Inc. ("Hyperion")[2] entered into a "Research and Development Support Services Agreement" ("RDSSA"), in which Hyperion agreed to provide research and development services (related to manufacturing silicon wafers) to Maxim at the Quantum Facility. FAC ¶¶ 40, 15, 16. Maxim rented laboratory space in Quantum Facility and by approximately April 2014, had "installed its equipment for its satellite operation." *Id.* ¶ 46. In June 2014, routine sampling of wastewater discharged from the Quantum Facility (conducted pursuant to San Jose Water Pollution Control District Self-Monitoring requirements) revealed presence of cobalt. *Id.* ¶ 47. According to the FAC, cobalt was present in "wastewater exiting the Quantum Facility" because it entered "a drain, toilet, or other connection to the sanitary sewer system." *Id.* Plaintiffs allege that "the wastewater containing the Cobalt Contaminants[3] was subject to leaking from sewer conveyances by way of leaching and discharges in cracks and misaligned joints while in route to the sanitary sewer treatment works." *Id.* ¶ 48.

In December 2014, Maxim conducted sampling for cobalt inside of the Quantum Facility using a "wipe" methodology and the sampling revealed cobalt dust at levels as high as "nearly 100 times in excess of what Maxim's internal guidelines deemed to be a safe level." *Id.* ¶ 56. A consultant, hired by Maxim, performed cobalt sampling at the Quantum Facility on or around January and April 2015. *Id.* ¶ 57. The sampling result – which Maxim shared with Mr. Planck – revealed "cobalt contamination at concentrations 10 to 100 times higher than those allowed by CAL/OSHA." *Id.* On or around June 2015, Maxim shut down its operations at the Quantum Facility and by the end of September 2015, all Maxim personnel left. *Id.* ¶ 50.

In November 2017, Mr. Planck hired a consulting firm to test for the presence of cobalt the Quantum Facility (with a Maxim representative in attendance)—the results of which "showed cobalt

---

[1] Mr. Planck is also the owner of Quantum. FAC ¶ 8.

[2] According to the FAC, Hyperion is Quantum's parent company. *See* FAC ¶¶ 21-35.

[3] The alleged contaminants are "cobalt metal power" and "cobalt oxide," which the FAC refers to collectively as "Cobalt Contaminants." FAC ¶ 5.

2

contamination several hundred times in excess of permissible concentrations." *Id.* ¶ 69. Plaintiffs claim that "the Cobalt Contaminants remain present at the Quantum Facility on surfaces and in the ambient air at concentrations which may present an imminent and substantial endangerment to health and the environment." *Id.* ¶ 109.

According to the FAC, Defendants knew but concealed from Mr. Planck that "Maxim intended to use, handle, and store cobalt pellets while performing operations at the Quantum Facility" and that "that Maxim's operations would generate a waste stream consisting of the known carcinogens cobalt metal power and cobalt oxide." *Id.* ¶¶ 4-5. The FAC lists over twenty communications between Mr. Planck and various Maxim representatives, in which Maxim's representatives did not disclose the use of cobalt at the Quantum Facility. *See id.* ¶¶ 18-37. Additionally, Plaintiffs allege that pursuant to the RDSSA, a Maxim representative provided Mr. Planck with a schedule of materials to be utilized at the Quantum Facility but "intentionally omit[ed]" Maxim's use of cobalt. *Id.* ¶ 41.

Plaintiffs allege that cobalt metal power and cobalt oxide are "known carcinogens" under California law and both are "listed hazardous substances" under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. 9601 *et seq.* ("CERCLA"). *Id.* ¶¶ 5-6. Quantum filed this action on December 19, 2018, asserting 11 causes of action against Maxim and Mr. Doluca. *See* ECF 1. Defendants filed a motion to dismiss, which the Court granted with leave to amend in part and without leave to amend in part. ECF 35. Quantum, now joined by Mr. Planck, filed a First Amended Complaint, asserting eight (8) causes of action.

(1) Violations of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(f)(1) – (Plaintiffs against All Defendants);

(2) Violations of the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. §6972(a)(1)(B) – (Plaintiffs against Maxim);

(3) Fraud—Intentional Concealment of Material Facts – (Mr. Planck against Maxim);

(4) Negligence and Negligence Per Se – (Plaintiffs against Maxim);

(5) Continuing Private Nuisance –  (Mr. Planck against Maxim);

(6) Waste – (Mr. Planck against Maxim);

3

1   (7) Trespass – (Mr. Planck against Maxim); and

2   (8) Breach of Contract – (Quantum against Maxim).

*See generally* FAC.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' claims for: (1) violations of CERCLA under 42 U.S.C. §§9607(a) and 9613(f)(1), (2) violations of RCRA, (3) fraud, and (4) waste. *See generally* Mot. Additionally, Defendants move to strike Plaintiffs' request for civil penalties pursuant to California Health & Safety Code § 25359.7. *Id.* at 22. In their opposition, Plaintiffs note that they are willing to "stipulate to the dismissal of their CERCLA §9613 claim without prejudice." Opp'n at 4 n. 1, ECF 40. Plaintiffs also "submit to the dismissal of their claims for Waste and Civil Penalties with prejudice." *Id.* at 15.

### A. CERCLA Claim

#### i. CERCLA Claim against Maxim

CERCLA authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation. *See* 42 U.S.C. § 9607(a). To prevail in a private cost recovery action under CERCLA, a plaintiff must establish that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of

4

that term[4], (2) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of persons subject to the liability provisions under 42 U.S.C. § 9607(a). *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir. 1990).

Defendants argue that the CERCLA claim in the FAC fails to "adequately plead the essential element of a 'release' or 'threatened release' of any 'hazardous substance' from the facility." Mot. at 9. CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment[.]" 42 U.S.C. § 9601(22). And the term "environment" means "(A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States …, and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States …." 42 U.S.C. § 9601(8).

Plaintiffs argue that the FAC allegations satisfy the "release into the environment" element of their CERCLA claim because Defendants (1) allowed "cobalt-laden wastewater" to exit the confines of the Quantum Facility "subject to leaking from sewer conveyances by way of leaching and discharges in cracks and misaligned joints while in route to the sanitary sewer treatment works" and (2) "abandoned the cobalt contaminated equipment" and "Cobalt Contaminants were deposited on all surfaces inside the vacuum chamber, in the lab housing of the Temescal unit (hearth evaporator), and in other areas of the Quantum Facility." Opp'n at 4-5; *see also* FAC ¶ 48, 65.

First, Plaintiffs' allegation that the cobalt-contaminated wastewater was "subject to leaking from sewer conveyances" is insufficient. *See* FAC ¶¶ 48, 94. "Release" and "environment" are specifically defined under CERCLA – and based on those definitions, the wastewater conveyance

---

[4] "The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).

5

system is not the "environment" (*i.e.*, navigable waters, ocean waters, surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air) and speculation of contaminants being "subject to leaking" is not "release" (*i.e.*, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing).

Plaintiffs argue that "[s]uch a mechanism for the release and dispersal of contaminants has been widely recognized as giving rise to liability under CERCLA Section 9607(a)" and cite two cases – both unhelpful to Plaintiffs' cause. In *State of Cal. v. Montrose Chem. Corp. of Cal.,* it was alleged that defendants released "DDT into the environment through ocean dumping, discharge into the sewer collection system, surface water runoff into the Los Angeles/Long Beach Harbors" and "PCBs into the marine environment through discharge into the sewer collection system and, from there, into the San Pedro Channel." 104 F.3d 1507, 1511 (9th Cir. 1997). In other words, in *Montrose*, there were allegations of actual (not speculative) release into the "environment" as defined under CERCLA (*i.e.*, Los Angeles/Long Beach Harbors and San Pedro Channel). *See id.* Unlike the circumstances in *Montrose*, here, Plaintiffs simply speculate that cobalt contaminants in the wastewater (last detected in June 2014) were "subject to leaking" from sewer conveyances "by way of leaching and discharges in cracks and misaligned joints while in route to the treatment works." FAC ¶¶ 94, 47.

Similarly, in *Lincoln Properties, Ltd. v. Higgins*, tests had revealed that "water in San Joaquin County wells" adjacent to defendant's shopping center had been contaminated by "several hazardous chemical compounds" used by three dry cleaning facilities in the shopping center. No. CIV. S-91-760DFL/GGH, 1993 WL 217429, at *1 (E.D. Cal. Jan. 21, 1993). There, hazardous materials had passed from the floor drains into the sewer system and eventually "leaked through joints in the existing sewer line and migrated to the water table." *Id.* *3-7. No such allegations are made here. Thus, the FAC's allegations regarding cobalt-contaminated wastewater are insufficient to establish a "release" or "threatened release" into the environment.

Second, the cobalt-contaminated equipment in the Quantum Facility is not a claim of release into the environment. Plaintiffs argue that "[c]ourts have … recognized that disposal may occur inside a building rather than directly to the 'outside.'" Opp'n at 5. As an initial matter, Plaintiffs

6

seem to equate "disposal" with "release into the environment." But CERCLA provides specific definitions for these two distinct (albeit related) concepts[5]. As the Ninth Circuit has explained, to prevail in a CERCLA claim, "release" or "threatened release" ***into the environment*** must be alleged. *Stevens Creek*, 915 F.2d at 1358. To be clear, disposal of hazardous waste may lead to release into the environment – but the FAC does not make that connection because it fails to allege that a release occurred as a result of the abandonment of Defendants' cobalt-contaminated equipment at the Quantum Facility.

Moreover, the Ninth Circuit's guidance on this issue is contrary to Plaintiffs' argument. In *Stevens Creek*, the Ninth Circuit provided definitions for "release" and "environment" under CERCLA and added "[o]ther courts considering this language have concluded that the 'environment' referred to in the statute 'includes the atmosphere, external to the building,' but not the air within a building." 915 F.2d at 1360 (collecting cases). With this binding authority in mind, Plaintiffs' reliance on district court decisions outside of the Ninth Circuit is misplaced. *See* Opp'n at 5-6.

At the Hearing, Plaintiffs' counsel requested an opportunity to amend the CERCLA claim if and when subsequent testing of the soil surrounding the sewer lines does in fact reveal release of cobalt. *See* Transcript 15:12-16:8, ECF 52. As noted at the Hearing, the Court agrees that such findings would constitute "good cause" under Rule 16.

Defendants argue that the FAC also fails to sufficiently allege two other elements of CERCLA claims: (1) that Plaintiffs incurred costs that were "necessary" and "consistent with the National Contingency Plan" and (2) that Maxim was a "generator" or "operator" under CERCLA. Mot. at 9-14. Because the Court has determined that Plaintiffs' CERCLA claim fails based on the "release" or "threatened release" into the environment element, the Court need not address Defendants' other arguments.

Thus, the Court GRANTS Defendants' motion to dismiss the CERCLA claim (claim 1)

---

[5] "The term 'disposal' means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. §§ 6903(3), 9601(29).

7

1 against Maxim with LEAVE TO AMEND if and when evidence of "release into the environment"
2 is obtained.

### ii. CERCLA Claim against Mr. Doluca

Plaintiffs' CERCLA allegations against Mr. Doluca, Maxim's CEO, fail for the same reasons as discussed above. In addition, Plaintiffs were on notice to be "mindful of the Court's direction" that Quantum's original allegations against Mr. Doluca in his personal capacity did not "even remotely make out a viable claim." ECF 35 at 5. The FAC fails to cure those deficiencies.

Plaintiffs allege that Mr. Doluca is liable under CERCLA as an "arranger" of hazardous waste. *See* Opp'n at 7-10; FAC ¶ 96. The stated basis for Plaintiffs' allegations is that Mr. Doluca (1) was the sole and exclusive individual at Maxim with the authority to approve the operations conducted at the Quantum Facility, (2) approved Maxim's plans for operations at the Quantum Facility, (3) knew that the operations at the Quantum Facility would involve the use, handling, and disposal of cobalt, subject to state and federal regulations, and (4) intended for cobalt-contaminated waste stream to be disposed of at the Quantum Facility. FAC ¶¶ 97-100, 39.

While CERCLA does not define what it means to be an "arranger" of hazardous waste disposal, the Supreme Court has explained that "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009). "While actions taken with the *intent* to dispose of a hazardous substance are sufficient for arranger liability, actions taken with the mere *knowledge* of such future disposal are not." *Team Enterprises, LLC v. W. Inv. Real Estate Tr.*, 647 F.3d 901, 908 (9th Cir. 2011). Mr. Doluca's approval of Maxim's operations at the Quantum facility and his knowledge of cobalt use are not enough to establish "arranger" liability.

Plaintiffs' conclusory allegations that Mr. Doluca "knew and intended" for cobalt-contaminated waste stream to be disposed of the Quantum Facility does not survive the motion to dismiss. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("[C]ourt[s] [are not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Plaintiffs' assertion that Mr. Doluca's general knowledge of Maxim's operations as its CEO and his "scientific background and expertise" somehow create

8

liability as an "arranger" of hazardous waste is not well taken. *See* Opp'n at 9. The Court agrees with Defendants that under Plaintiffs' theory, CERCLA liability would attach to any corporate officer with experience and knowledge of her or his company's business. *See* Reply at 7-8, ECF 42.

Accordingly, Plaintiffs' CERCLA claim as to Mr. Doluca is DISMISSED WITHOUT LEAVE TO AMEND.

### B. RCRA Claim

Next, Defendants argue that FAC's RCRA claim is deficient. For their RCRA claim, Plaintiffs must plead that Maxim (1) has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which (2) may present an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B). Moreover, for claims alleging violations of RCRA, a plaintiff must provide notice to the relevant parties sixty-days before filing suit. *See* 42 U.S.C. § 6972(b)(1)(A); *see also Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) ("[W]here a party suing under the citizen suit provisions of RCRA fails to meet the notice and 60–day delay requirements of § 6972(b), the district court must dismiss the action as barred by the terms of the statute."). The purpose of the notice requirement is to give the alleged violator an opportunity to bring itself into compliance and render unnecessary a citizen's suit. *N. California River Watch v. Honeywell Aerospace*, 830 F. Supp. 2d 760, 765 (N.D. Cal. 2011) (citing *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (internal quotation omitted).

First, Maxim argues that Plaintiffs have failed to allege an "imminent and substantial endangerment to health and the environment." Mot. at 16-17. In its previous order the Court noted that the "most recent test for the presence of cobalt in its facility was in November 2017" and therefore the Complaint lacked allegations of "an imminent and substantial endangerment to health or the environment." ECF 35 at 5. In its present motion, Maxim argues that Plaintiffs have failed to cure this deficiency because the FAC alleges—without factual detail—that the present concentrations of Cobalt in Quantum Facility's ambient air ***may*** present an imminent and substantial endangerment to health and the environment. Mot. at 17. The Court disagrees.

Plaintiffs have alleged that cobalt containments were detected at the Quantum facility, in concentrations well-above the permitted limits. FAC ¶¶ 56, 57, 67, 69. Also, the FAC alleges that "as of the time of filing of this First Amended Complaint, the Cobalt Contaminants remain present at the Quantum Facility on surfaces and in the ambient air at concentrations which may present an imminent and substantial endangerment to health and the environment." *Id.* ¶ 109. According to the FAC, cobalt metal power and cobalt oxide are (1) "listed hazardous substances" under CERCLA and (2) carcinogens under California law. *Id.* 5-6. Viewing the allegations in the light most favorable to Plaintiffs, the Court is persuaded that the FAC contains sufficient allegation that the cobalt contaminants at the Quantum Facility "may present an imminent and substantial endangerment to health or the environment" as required by RCRA.

Second, Maxim argues that the RCRA claim must be dismissed because Plaintiffs failed to satisfy the mandatory requirement to provide statutory compliant notice. Mot. at 17-18. Maxim does not contend that Plaintiffs' RCRA notice was untimely or lacked the required content – only that the notice was deficient because Maxim was denied access to the Quantum Facility after it received the notice and therefore was "denied the opportunity to 'bring itself into compliance.'" Mot. at 17-18. Plaintiffs respond that "Maxim is arguing facts which are improper in the context of a Motion to Dismiss," namely its exchanges with Mr. Planck regarding access to the Quantum Facility. The Court agrees with Plaintiffs. The parties' correspondence regarding access is beyond the pleadings and not properly subject to judicial notice and therefore irrelevant in the context of Maxim' motion to dismiss. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("Generally, a court may not consider material beyond the complaint in ruling on a Fed.R.Civ.P. 12(b)(6) motion.").

Thus, Maxim's motion to dismiss the RCRA claim (claim 3) is DENIED.

### C. Mr. Planck's Fraud Claim

Maxim seeks dismissal of Mr. Planck's fraud claim because Mr. Planck signed the RDSSA on behalf of Hyperion and therefore, Mr. Planck, in his personal capacity, may not allege detrimental reliance on Maxim's representations. *See* Mot. at 20-21. Maxim also argues that the FAC's fraud allegations fail because (1) they are barred by the statute of limitation and (2) do not state the claim

1  with particularity.  *Id.* at 18-20, 21.

### i. Detrimental Reliance

The elements for a fraud claim in California are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003).  Mr. Planck alleges that he "did not know or have any reason to suspect that Maxim had fraudulently concealed … material facts [regarding the use of cobalt] from him prior to entering into the RDSSA." FAC ¶ 119.  He further alleges that had he had known, he "never would have allowed Maxim to carry out its operations at the Quantum Facility." FAC ¶ 118.

Maxim argues that Mr. Planck may not allege "detrimental reliance" in his individual capacity, because he was not a party to the RDSSA—Hyperion was.  Mot. at 20-21.  Mr. Planck responds that he (1) "is the sole owner and representative of Hyperion Group and Quantum," (2) "is the only representative of Hyperion and Quantum that negotiated with Maxim representatives regarding the terms and conditions of the RDSSA," and (3) "signed the RDSSA on Hyperion Group's behalf." Opp'n at 3.  The Court agrees with Maxim.

In establishing a cause of action for fraud, "a plaintiff must allege that a material and knowingly false representation was made with the intent to induce action, and that such representation caused reasonable and detrimental reliance on the part of the *plaintiff*." *Pulver v. Avco Fin. Servs.*, 182 Cal. App. 3d 622, 640 (Ct. App. 1986) (citation omitted).  Setting aside Plaintiffs' irrelevant (but amusing) reference to artificial intelligence, Hyperion and Mr. Planck are not interchangeable under the law.  A shareholder may not sue as an individual if his or her injuries are merely incidental to or an indirect result of injuries to the corporation. *Pastor v. ERI*, 162 F.3d 1169 (9th Cir. 1998) (citing *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)).  Thus, Mr. Planck may not bring a fraud cause of action in his individual capacity, when the alleged misrepresentation was made to Hyperion—not Mr. Planck.

The Court and the parties have been down this road before.  Quantum, in its original Complaint, brought fraud claims on behalf of Quantum.  *See* ECF 1 ¶¶ 122-143.  Defendants challenged those allegations in their first motion to dismiss, arguing that "Plaintiff must plead and

11

prove that it (not a third party) actually and justifiably relied on the defendant's alleged misrepresentation." ECF 18, 17-18. In its opposition, Quantum acknowledged this deficiency and requested "leave to amend the Complaint to assert the Fraud claims directly on behalf of those individuals and entities that were directly defrauded by Maxim." ECF 22 at 15-16. The Court granted Quantum's request for leave to amend its fraud allegations. *See* ECF 35 at 4. Now, in the FAC, Quantum and Mr. Planck have, again, brought a fraud claim on behalf of a party "not directly defrauded by Maxim." At the Hearing, counsel for Plaintiffs stated "[w]e've tried Quantum, we've tried Mr. Planck. Plaintiffs respectfully request leave to amend to assert the fraud claim on behalf of Hyperion." Transcript at 23:15-17. Plaintiffs have not presented any reason(s) for not adding the correct party to their FAC and thus, the Court is not persuaded that Plaintiffs should get a third bite at this apple.[6] Mr. Planck's claim for fraud (claim 3) is DIMISSED WITHOUT LEAVE TO AMEND.

### ii. Statute of Limitation

Maxim argues that Mr. Planck's fraud claim is barred by the statute of limitations, which is three years. Mot. at 18-20; s*ee also* Cal. Civ. Proc. Code § 338(d). Mr. Planck does not challenge that the discovery of cobalt (basis for his fraud cause of action) took place outside of the statute of limitation. Instead, Mr. Planck relies on a tolling agreement the parties entered into on February 2, 2017 ("The Tolling Agreement)". *See* Opp'n at 12-13; FAC ¶¶ 122-27. The Tolling Agreement, on its own, does not save Mr. Planck's fraud claim because it only extended the applicable statute of limitation to December 31, 2017 and the complaint in this action was not filed until December 19, 2018. *See* FAC ¶ 122, ECF 1. Recognizing that fact, Mr. Planck relies on correspondence between counsel in "late 2017 and early 2018" regarding an extension of the Tolling Agreement. FAC ¶¶ 123-27. The Tolling Agreement provides that it "constitutes the entire agreement between and among the Parties" and "shall not be modified, amended, or extended except by an instrument

---

[6] The Court indicated at the Hearing that because this case is at an early stage, it was inclined to allow leave to amend to bring fraud claims on behalf of Hyperion. *See* Transcript at 23:20-21. However, upon further reflection, the Court finds that Plaintiffs were fully aware of the deficiency regarding their fraud claim, had the opportunity to correct that deficiency, and failed to do so. Therefore, a second leave to amend is not justified.

12

in writing *signed by each Party*." Tolling Agreement § 7 (emphasis added), ECF 38-5.

Maxim argues that the Tolling Agreement was never extended because (1) it was not signed by the *parties*, as required by the clear language of the Tolling Agreement, (2) the conditions for the extension (exchange of insurance policies prior to mediation) were never met, and (3) the email correspondence was not a "complete agreement" because it lacked a "specific length of tolling period." Mot. at 18-20. Mr. Planck responds that the correspondence and "clear course of conduct" between counsel establish that the parties agreed to extend the Tolling Agreement. Opp'n at 12-13. As noted at the Hearing, the Court is doubtful that allegations of "course of conduct"—even if properly pled and proven—can overcome the clear language of the Tolling Agreement requiring that any extension must be "signed by the parties." That said, the Court has dismissed Mr. Planck's fraud claim because it is brought on behalf of the wrong party, and thus, it need not decide the issue of statute of limitation and declines to do so.

### iii. Particularity

Maxim argues that Mr. Planck has failed to allege the specific "who, what, when, where, and how" of the alleged omissions. Mot. at 21. Mr. Planck responds that the FAC "lists twenty-four (24) separate, specific, and distinct allegations of fraudulent omissions by Maxim's employees while communicating with Mr. Planck." Opp'n at 14 (citing FAC ¶¶ 17-35). Maxim replies that the FAC contains 24 separate allegations of omissions "using nearly the exact same form." Reply at 11.

Again, because the Court has dismissed Mr. Planck's fraud claim on other grounds, it does not decide the issue of "particularity."

In sum, Mr. Planck's claim for fraud is DISMISSED WITHOUT LEAVE TO AMEND.

## IV. REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of (1) certified copies of all grant deeds recorded within the last 10 years with the Santa Clara County Recorder for Quantum Facility and (2) an "Official Notice of Inspection" of the Quantum Facility dated 12/17/2014 and stamped "Received" by Santa Clara County Department of Environmental Health on January 20, 2015. ECF 39 at 2. Plaintiffs request that this Court take judicial notice of Mr. Doluca's biography posted on Maxim's website.

ECF 41 at 2.

The documents for which the parties seek judicial notice are not directed to a fact of consequence in determining the present motion. Consequently, the Court DENIES the parties' respective requests for judicial notice.

**V.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Claim 1 of Plaintiffs' FAC for violations of CERCLA, 42 U.S.C. § 9613(f)(1) is DISMISSED WITHOUT PREJUDICE.

(2) Defendants' motion to dismiss claim 1 of Plaintiffs' FAC for violations of CERCLA, 42 U.S.C. § 9607(a) is GRANTED WITH LEAVE TO AMEND as to Maxim and GRANTED WITHOUT LEAVE TO AMEND as to Mr. Doluca.

(3) Maxim's motion to dismiss claim 2 of Plaintiffs' FAC for violations RCRA 42 U.S.C. §6972(a)(1)(B) is DENIED.

(4) Maxim's motion to dismiss claim 3 of Plaintiffs' FAC for Fraud is GRANTED WITHOUT LEAVE TO AMEND.

(5) Claim 6 of Plaintiffs' FAC for Waste is DISMISSED WITH PREJUDICE.

(6) Plaintiffs' request for civil penalties pursuant to California Health & Safety Code § 25359.7 is STRICKEN WITH PREJUDICE.

(7) Any amended pleading shall be filed on or before December 18, 2019.

(8) Leave to amend is granted only as to Plaintiffs' existing claims; Plaintiffs may not add claims without leave of the Court.

**IT IS SO ORDERED.**

Dated: November 18, 2019

_____
BETH LABSON FREEMAN
United States District Judge